CRAIG K. PERRY, Esq.
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., Suite 800
Las Vegas, NV 89102
Telephone: (702) 228-4777
Fax: (702) 943-7520
Email: cperry@craigperry.com

CHRISTOPHER E. ROBERTS, Esq
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 130
Clayton, MO 63105
Telephone: (314) 863-5700
Fax: (314) 863-5711
Email: croberts@butschroberts.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff*
*JASON CARRODINE*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JASON CARRODINE, *individually, on behalf of himself, and all others similarly situated,*<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ACCIDENT, LLC, D/B/A ACCIDENT.COM<br><br>　　　　　　Defendant. | Case No.<br>Dept. No.:<br><br><br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY DEMAND** |

### CLASS ACTION COMPLAINT

COMES NOW Plaintiff Jason Carrodine ("Carrodine"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Accident, LLC d/b/a Accident.com ("Defendant"), states:

///

1

**BACKGROUND**

1.  Plaintiff Jason Carrodine ("Plaintiff" or "Carrodine") brings this case to protect his privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2.  Specifically, this case is about stopping incessant telemarketers like Defendant from placing incessant and unwanted calls to the phones of Carrodine and likely thousands of other persons who have place their phone numbers on the National Do-Not-Call Registry ("DNC List").

3.  Carrodine brings this class action lawsuit, individually, and on behalf of all others similarly situated, against Defendant for placing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

4.  In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

5.  A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.  The TCPA affords protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A); 47 U.S.C. § 227(b)(1)(3); 47 C.F.R. § 64.1200(a).

7.  Since 2003, persons who register their cell phone numbers on the DNC List are considered "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039

(2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8. Defendant improperly placed calls to the phones of Carrodine and the putative class members despite their phone numbers being on the DNC List.

9. The receipt of telemarketing calls is a rampant problem in this country. For example, in the first nine months of 2024 alone, approximately 38.8 billion robocalls were placed in the United States. RobocallIndex.com, *YouMail Robocall Index*, https://robocallindex.com/history/time (last visited Oct. 2, 2024).

10. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. In fact, in 2023 alone, there were over two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Oct. 4, 2024.

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## PARTIES AND BACKGROUND ON THE PARTIES

13. Carrodine is an individual who at all times material to this Complaint has resided in Las Vegas, Nevada and has been a citizen of the State of Nevada.

14. Defendant is a Delaware limited liability company with its principal place of business in New York. Defendant has been in good standing to transact business throughout the United States at all times material to this Complaint.

15. According to Defendant's CEO, Defendant is a "lead generation company" that "identifies individuals involved in motor vehicle accidents seeking legal representation and connects these individuals with law firms that will evaluate their cases."

16. Defendant makes money by referring leads to various law firms around the country.

17. Defendant markets its services through the placing of telemarketing phone calls.

18. Carrodine was not involved in a motor vehicle accident at or around the time he received the calls at issue, nor was Carrodine looking for or interested in legal representation for any personal injury matters at or around the time he received the calls at issue.

19. In fact, Carrodine has not been involved in an automobile accident for over 35 years.

20. Carrodine did not provide Defendant or anyone acting on its behalf any form of consent to contact him on his cell phone.

///

///

///

///

///

4

## JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

22. This Court has jurisdiction over Defendant because, among other things, Defendant: transacts business in Nevada, purposefully directed its marketing efforts to Carrodine in Nevada, utilized Nevada area codes in placing the calls at issue to Carrodine, regularly markets its services in the State of Nevada, and otherwise has sufficient contacts with the State of Nevada.

23. The harm was sustained by Carrodine in this District and Carrodine has resided in this District at all times relevant to this Complaint.

24. For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## DEFENDANT'S CALLS TO CARRODINE AND OTHERS

25. At all times relevant to this Complaint, Carrodine was the owner of a cell phone bearing the phone number 702-XXX-9862.

26. Carrodine placed his phone number on the national Do Not Call Registry ("DNC List") on October 23, 2014, for the purpose of being left alone by telemarketers.

27. The account for Carrodine's phone is held in his personal name and is not held in the name of a business.

///

28. Carrodine uses his phone primarily for personal and household purposes, namely, communicating with friends and family members.

29. Carrodine and the putative class members did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent, to Defendant or anyone acting on Defendant's behalf to place calls to his cell phone.

30. Carrodine never provided his personal information on a website maintained by Defendant or anyone acting on Defendant's behalf.

31. On March 20, 2024, Carrodine received a call on his cell phone number that appeared as having originated from phone number 702-816-5274.

32. Carrodine answered the phone and a representative on the other line stated he was calling from "Auto Claim Solutions." The representative then asked Carrodine if he was recently involved in a car accident and if he had legal representation.

33. Between March 20, 2024, and May 15, 2024, Carrodine received at least 20 calls in which the caller stated they were calling from "Auto Claims Solutions" and then proceeded to ask if he was recently involved in a car accident and if he had legal representation.

34. In the late afternoon of May 15, 2024, Carrodine answered a call in which the caller again stated they were calling from "Auto Claims Solutions" and again proceeded to ask Carrodine if he was recently in a car accident and if he had legal representation.

35. Being frustrated and annoyed by the calls, and not yet certain who was behind the incessant calls, Carrodine feigned interest and advised the caller that he was involved in a car accident and that he was looking for legal representation.

36. Carrodine was then transferred to a representative who stated they were calling for Accident.com.

///

37. Shortly after the call, Carrodine received an e-mail from Defendant. The e-mail contained Defendant's logo stating "Accident.com." The e-mail stated that Carrodine would be contacted by "an accident law firm in Nevada." The e-mail was signed "Team Accident.com."

38. Not long after receiving the e-mail, Carrodine was contacted on his phone by the law firm referenced in the e-mail. The law firm representative advised that they received the lead regarding Carrodine from Accident.com. Carrodine advised the law firm representative that he was not in an accident, did not need legal representation, that his phone number was on the DNC List and to not call him anymore.

39. The at least 20 calls Carrodine received between March 20, 2024, and May 15, 2024, all appeared as having originated from a 702-area code.

40. On information and belief, these calls were spoofed to make it more likely Carrodine would answer the calls as the phone number contained the same area code as Carrodine's phone.

41. On information and belief, Defendant knew that it should not have placed calls to Carrodine and the putative class members, yet incessantly placed calls to them.

42. The calls Defendant placed to Carrodine and the putative class members were harassing, irritating, invasive and annoying.

43. Defendant's calls invaded Carrodine's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

44. Defendant's calls caused Carrodine and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted calls.

45. Defendant's aggressive telemarketing practices have led consumers besides Carrodine to complain about such calls.

///

46. A litany of consumers made similar complaints to the Better Business Bureau ("BBB") about Defendant's improper telemarketing practices.

47. One consumer complained, stating: "This company has been spamming my phone for months! I am receiving [multiple] calls a day from different area codes, and no matter how many times I have asked them to place me on their DNC list, I still continue to receive calls . . . ."

48. Another consumer complained: "For months I have been receiving spam calls identifying themselves as 'the accident help line.' Sometimes 4 calls a day. They come from spoofed #s. . . . Perhaps you can help get my # off the list they give to their call centers."

49. Another consumer complained: "I am getting nonstop spam calls using different fake spoofed numbers so I can't even block them from accident.com. After asking many times to be left alone the calls keep coming so I played along to see who the harassers are. I . . . was connected to an accident.com call rep. . . ."

50. Another consumer complained: "For the last two months, I have been getting spam (sic) called by Accident.com. . . . This is despite me being on the Do Not Call List. . . . [T]he company at the heart of these calls is Accident.com. I wrote Accident.com and asked to please put me on their internal do not call list. Clearly this hasn't happened as I've continued to get calls. . . ."

51. Another consumer complained: "I've been getting robocalls from them five or six times a day for the last month. My phone is on the national do not call registry and I've asked to be placed on their do not call list but I keep getting the calls."

52. Another consumer complained: "I have 'opted out' of receiving phone calls – pressed 1 to be put on their do-not-call list. Months later, I am still receiving daily calls."

///

**DIRECT AND VICARIOUS LIABILITY**

53. Without the benefit of discovery, and because Defendant disclosed its identity through the telemarketing calls at issue, Carrodine assumes Defendant directly placed the calls at issue.

54. However, if some or all the calls were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

55. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

56. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

57. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

9

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

58. If Defendant directly placed the calls at issue to Carrodine and the putative class members, Defendant is directly liable for the placing of such calls.

59. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

60. If Defendant did not directly place the calls at issue to Carrodine and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

61. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting revenue generated through unlawful telemarketing communications.

62. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

63. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

64. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

65. For the count identified below, if Defendant directly placed the calls at issue, they are directly liable. Alternatively, to the extent any calls were made by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

**CLASS ALLEGATIONS**

66. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Carrodine brings this Complaint as a class action on behalf of himself and all others similarly situated.

This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

67. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Carrodine seeks to represent the following class:

> For the four-year period prior to the filing of this lawsuit to the date of class certification, all persons:
>
> (1) who received two or more calls during a 12-month period in connection with the marketing of Defendant's services;
>
> (2) whose number was registered on the Do Not Call Registry for more than 30 days at the time the calls were received; and,
>
> (3) whose number is registered to an individual and not a business.

68. Carrodine reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

69. The members of the proposed class are so numerous that joinder of all members is impracticable. Carrodine reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

70. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

71. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant's conduct of placing calls to persons whose phone numbers are registered on the DNC List violates 47 U.S.C. § 227(c);

b. Whether the calls were "solicitations" as defined by the TCPA;

11

c. whether Defendant maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls to numbers on the DNC List;

d. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

e. Whether Carrodine and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

72. Carrodine's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

73. Carrodine and his counsel will fairly and adequately protect the interests of the members of the proposed class. Carrodine's interests do not conflict with the interests of the proposed class he seeks to represent. Carrodine has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

74. Carrodine's counsel will vigorously litigate this case as a class action, and Carrodine and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

75. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be

unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

76. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

77. Questions of law and fact, particularly the propriety of placing of calls to phone numbers on the DNC List, predominate over questions affecting only individual members.

78. Defendant has acted or has refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (National DNC List Violations)**

79. Carrodine incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

80. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

81. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

82. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

83. By placing calls to Carrodine and the putative class members' phone numbers,

13

which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

84. Defendant and/or those acting on its behalf knew or should have known that Carrodine's and the putative class members' phone numbers were registered on the DNC List.

85. Defendant and/or those acting on its behalf willfully violated the TCPA when placing calls to Carrodine's and the putative class members' phones.

86. Carrodine and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant and/or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant and/or those acting on its behalf willfully violated the TCPA.

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests the Court enter judgment in his favor and against Defendant Accident, LLC d/b/a Accident.com, and grant the following relief:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Carrodine as the class representative;

B. Enter an order appointing Craig K. Perry & Associates and Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Carrodine and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated Section 227(c) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Carrodine and the putative class members that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from placing calls to persons on the DNC List without first obtaining the proper form of consent;

E. Award Carrodine and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

      a. Award Carrodine and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, and in accordance with Fed R. Civ. P. 38, and LR 38-1, Plaintiffs demands a trial by jury.

Dated this 11th day of October, 2024.

      CRAIG K. PERRY & ASSOCIATES

      /s/ Craig K. Perry_____
      Craig K. Perry, Esq.
      Nevada Bar No. 3786
      2300 W. Sahara Ave., Suite 800
      Las Vegas, Nevada 89102
      Telephone: (702) 228-4777
      cperry@craigperry.com

      BUTSCH ROBERTS & ASSOCIATES LLC

      */s/ Christopher E. Roberts*
      Christopher E. Roberts (pro hac forthcoming)
      7777 Bonhomme Avenue, Suite 1300
      Clayton, MO 63105
      Telephone: (314) 863-5700
      croberts@butschroberts.com
      *Subject to Pro Hac Vice*

      *Attorneys for Plaintiff*