# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JASON CARRODINE, *individually, on behalf of himself, and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>ZUPAX MARKETING, LLC<br><br>Defendant. | Case No. 2:24-cv-01900-JAD-NJK<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Jason Carrodine filed suit against Defendant Zupax Marketing, LLC, claiming that it violated Section 227(c) of the Telephone Consumer Protection Act ("TCPA") for placing calls to his cell phone despite his phone number being registered on the National Do-Not-Call Registry.[1] Default was entered against Defendant.[2] Plaintiff now moves for default judgment. The seven-factor analysis set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) justifies awarding a default judgment in Plaintiff's favor. I therefore grant Plaintiff's motion, award him $30,000.00, and close this case.

## Background

Plaintiff is the owner of a cell phone, the phone number for which is (702) XXX-9862. Plaintiff uses this phone number primarily for personal purposes such as communicating with friends and family members. Plaintiff's phone number is also registered in his name, and not in the name of a business. To avoid being contacted by telemarketers, Plaintiff registered his phone number on the National Do-Not-Call Registry ("DNC List") on October 23, 2014.

---

[1] ECF No. 11
[2] ECF No. 16

Defendant is a Florida limited liability company that transacts business throughout the United States. Defendant's business is telemarketing. Specifically, Defendant markets its clients' products and services, in part, through placing telemarketing calls.

Beginning on March 20, 2024, Plaintiff began receiving numerous telemarketing calls from Defendant on his phone that attempted to provide him with counsel regarding an automobile accident. Plaintiff received these calls even though his number was registered on the DNC List and even though he did not provide Defendant consent to call him.

Plaintiff received at least 20 communications from Defendant, which followed the identical or similar scripts, and otherwise had similar indicia. At the end of most of these communications, Plaintiff advised Defendant's representative that he was not interested in the services being marketed and asked that the caller no longer contact him. Yet, Defendant continued to call Plaintiff.

Plaintiff filed an amended complaint against Defendant on December 20, 2024, for violating 47 U.S.C. § 227(c) of the Telephone Consumer Protection Act ("TCPA"). Specifically, Plaintiff alleges Defendant's calls violate the TCPA because his phone number was registered on the DNC List for more than 30 days at the time he received the calls.

Defendant was properly served on January 8, 2025. Defendant failed to file an answer or any other responsive pleading. Plaintiff moved for default and The Clerk of Court entered default against Defendant on July 10, 2025. Plaintiff now seeks default judgment in the amount of $30,000 for Defendant's violations of Section 227(c) of the TCPA.

**Discussion**

**I.     Default judgment standard and the *Eitel factors***

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV.

2

P. 55(a). The facts alleged in the complaint are deemed to be admitted upon entry of default. *See generally J&J Sports Prods., Inc. v. Gonzalez Bros., Inc.*, 2021 WL 5771122, at \*2 (D. Nev. Dec. 3, 2021).

Rule 55(b)(2) "permits a plaintiff to obtain a default judgment after the clerk enters default based on a defendant's failure to appear." *Covenant Care California v. Shirk*, 2018 WL 3429669, at \*1 (D. Nev. July 16, 2018)*; see also* FED. R. CIV. P. 55(b)(2). Once the clerk enters a default, the "complaint's factual allegations are taken as true, except for those relating to damages." *Id.* It is within the Court's discretion to determine whether additional proof is necessary to establish damages and to grant a default judgment. *Id.*

The Court analyzes seven factors to determine whether a default judgment should be entered. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Those factors are:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* As default has already been entered, "the court must take the complaint's factual allegations as true, except those relating to damages."[3] *Kelly*, 2021 WL 9316350, at \*1.

## II.     The *Eitel* factors warrant entry of default judgment against Defendant

### A.     Plaintiff will be prejudiced if the Court does not enter a default judgment in his favor.

A plaintiff may be prejudiced by not being awarded a default judgment where he or she "will have no other means to litigate his claim." *Kelly v. Hickman*, 2021 WL 9316350, at \*1 (D. Nev. Aug. 24, 2021). The denial of a motion for default judgment can leave a plaintiff "without

---

[3] While the allegations of the Complaint are accepted as true, Plaintiff also submitted a declaration in support of his claims and allegations.

recourse of recovery or remedy" thereby causing "significant prejudice." *J&J Sports Prods., Inc.*, 2021 WL 5771122, at *2.

Plaintiff would be prejudiced if the Court does not enter a default judgment in his favor. Here, Plaintiff has no other means of litigating his case absent entry of a default judgment in his favor. *Kelly*, 2021 WL 9316350, at *1 ("And absent entry of default judgment, [plaintiff] will suffer prejudice because he will have no other means to litigate his claim."). As Plaintiff would be prejudiced by the court not entering a default judgment in his favor, this *Eitel* factor supports entry of a default judgment.

**B.      Plaintiff's complaint is meritorious and sufficiently states a claim for relief.**

"The second and third *Eitel* factors focus on whether [plaintiff] has stated a claim under which he can recover." *Kelly*, 2021 WL 9316350, at *2. These factors favor entering a default judgment in Plaintiff's favor.

Plaintiff seeks relief under Section 227(c) of the TCPA. To state a claim under Section 227(c)(5), a plaintiff must allege that he or she: (1) "received more than one telephone call within any 12-month period;" (2) that the calls were "by or on behalf of the same entity"; and, (3) that the calls violate the "regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5); *see generally Garvey v. Keller Williams Realty, Inc.*, 2024 WL 1857216, at *3 (D. Nev. Apr. 26, 2024). The TCPA's regulations provide, in turn, that "[n]o person or entity shall initiate any telephone solicitation to . . .  residential telephone subscriber residential who has registered . . . his telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). The "owner and subscriber of a phone number with a number listed on the Do-Not-Call Registry" suffers an "injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (emphasis added).

4

There are two key terms in the relevant regulation. First, the term "telephone solicitation" means a call, "the purpose" of which is to "encoura[ge] the purchase . . . of, or investment in, property, goods or services." 47 C.F.R. § 64.1200(f)(15). Second, the calls must be to a "residential telephone subscriber." 47 C.F.R. § 64.1200(c)(2). A cell phone user whose phone number is registered on the DNC List is presumed to be considered a residential telephone subscriber for a claim made under Section 227(c) of the TCPA. *See generally Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-26 (9th Cir. 2022).

The Court finds Plaintiff has established the elements of his claim under Section 227(c) of the TCPA. First, Plaintiff registered his phone number on the DNC List on October 23, 2014, which was nearly a decade before he received the calls at issue. Second, Plaintiff received more than one call within a 12-month period from Defendant as he received at least 20 calls from Defendant between March 20, 2024, and May 15, 2024. Third, Plaintiff is a residential subscriber as he registered his cell phone number on the DNC List, and his number is presumed to be a residential number. Moreover, the account for the phone number is held in Plaintiff's individual name (not in the name of a business) and he uses the phone primarily for personal purposes, such as communicating with friends and family members. Last, the calls at issue were "telephone solicitations" as they attempted to sell Plaintiff personal injury representation services, which related to Defendant's marketing business.

Where a defendant violates the DNC List protections of the TCPA, i.e., Section 227(c), a plaintiff is entitled to receive up to $500 per violation. 47 U.S.C. § 227(c)(5)(B). This amount may then be trebled up to $1,500 per violation if the TCPA is willfully violated. 47 U.S.C. § 227(c)(5)(C); *see generally Breda v. Cellco P'ship*, 934 F.3d 1, 5 (1st Cir. 2019) ("The TCPA is a strict liability statute, but provides for treble damages in the case of willful . . . violations"). A defendant willfully violates the TCPA where it "knew that it was engaging in the conduct that

gave rise to liability." *Wakefield v. ViSalus, Inc.*, 2019 WL 2578802, at *2 (D. Or. June 24, 2019).

Defendant's conduct was willful because it knowingly initiated telemarketing calls to a number listed on the DNC List and continued to do so even after Plaintiff expressly requested that the calls cease. Here, Defendant incessantly called Plaintiff despite the fact: (1) Plaintiff's number was registered on the National Do-Not-Call Registry for nearly a decade before receiving the calls at issue; (2) Plaintiff never provided consent to Defendant to contact him; and, most importantly, (3) Plaintiff repeatedly asked Defendant's representatives to stop calling him, yet the calls persisted. Such conduct demonstrates a knowing and intentional disregard for the TCPA's DNC List protections.

Plaintiff is therefore entitled to willful damages for the 20 calls at issue, making his total damages $30,000 ($1,500 x 20 calls) under Section 227(c) of the TCPA. Plaintiff states a meritorious claim for relief and therefore the second and third *Eitel* factors support the Court entering a default judgment in Plaintiff's favor.

## C.    The sum of money at stake supports entry of a default judgment.

The fourth *Eitel* factor "considers the amount of money at stake in relation to the seriousness of the defendant's conduct." *Kelly*, 2021 WL 9316350, at *4. This factor supports entry of judgment where the money at stake is proportional, appropriate and provided for "under the laws for which [plaintiff] seeks a remedy." *J&J Sports Prods., Inc.*, 2021 WL 5771122, at *2. This factor is satisfied and the amounts sought by a plaintiff are "reasonable" where the amounts "are within the limits" of damages "established by Congress." *Id.*

Plaintiff satisfies this factor as he seeks the amounts permitted by the TCPA. Here, the TCPA is a statute that is "primarily designed to prevent nuisance and invasion of privacy." *Caplan v. Budget Van Lines, Inc.*, 2020 WL 4430966, at *3 (D. Nev. July 31, 2020) (citing

6

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)). To achieve this objective, the TCPA provides for up to $500 per violation of Section 227(c), which can be trebled up to $1,500 per violation if the violations are willful. 47 U.S.C. § 227(c)(5)(B)-(C). This is the precise relief Plaintiff seeks. Plaintiff's privacy rights were violated as he received unwanted calls, and he continued to receive these calls after he requested that the calls stop.  As the amounts Plaintiff seeks are proportional and appropriate for the misconduct at issue, and are authorized by the TCPA, this *Eitel* factor also supports entry of a default judgment in Plaintiff's favor.

**D.      There is no dispute as to the material facts.**

The fifth *Eitel* factor considers whether "disputes regarding material facts could arise." *Kelly*, 2021 WL 9316350, at *1. There is no dispute over material facts where a defendant "fail[s] to participate" in the case. *J&J Sports Prods., Inc.*, 2021 WL 5771122, at *2. Here, Defendant was properly served and has failed to participate in the litigation. Since there is no dispute as to the material facts, this *Eitel* factor also supports entry of a default judgment in Plaintiff's favor.

**E.      Defendant's default did not arise from excusable neglect.**

The sixth *Eitel* factor considers whether the default "may have resulted from excusable neglect." *Kelly*, 2021 WL 9316350, at *1. Where a defendant does not oppose a Clerk's entry of default or otherwise participate in the case, there is "no indication that default is due to excusable neglect." *J&J Sports Prods., Inc.*, 2021 WL 5771122, at *2; *see Kelly*, 2021 WL 9316350, at *1. Here, there is no evidence of the default arising from excusable neglect because Defendant has not opposed the clerk's entry of default or otherwise participated in the case. This *Eitel* factor therefore also supports entry of a default judgment for Plaintiff.

**F.      While policy prefers a decision on the merits, entry of a default judgment is still warranted.**

7

Public policy generally disfavors the entry of default judgments because "cases should be decided upon their merits whenever reasonably possible." *Kelly*, 2021 WL 9316350, at *4 (internal quotation and citation omitted). However, where a defendant fails "to answer the complaint, a decision on the merits is impractical, if not impossible." *J&J Sports Prods., Inc.*, 2021 WL 5771122, at *2 (internal quotation and citation omitted). Where the defendant fails to answer the complaint, this factor is "outweighed by" the other *Eitel* factors and entry of a default judgment is warranted. *Id.*

While policy generally favors a decision on the merits, a default judgment will still be entered for Plaintiff. Defendant has failed to appear in this case or answer the Complaint. Thus, this *Eitel* factor is outweighed by the other factors, and the Court finds that it is warranted to enter a default judgment for Plaintiff.

### Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is **GRANTED**. The Clerk of the Court is directed to **ENTER JUDGMENT** in favor of Plaintiff Jason Carrodine and against Defendant Zupax Marketing, LLC in the amount of $30,000.00 and **CLOSE THIS CASE**.

Date: _____        So Ordered: _____
                                                          Jennifer A. Dorsey
                                                          United States District Judge